UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:16-CR-10054-MLW |
| | ) | |
| STEPHEN WILLIAMS | ) | |
| | ) | |

DEFENDANT'S SENTENCING MEMORANDUM
AND NOTICE OF INTENT TO SEEK NON-GUIDELINE SENTENCE

The Defendant, Stephen Williams, respectfully submits this sentencing memorandum in support of its recommendation that he be sentenced to prison for a term of 60 months, which is outside the applicable guidelines sentencing range of 100-125 months. The Defendant further requests that the Court sentence him to a period of supervised release for three years and order restitution in the amounts outlined by the pre-sentence report. Relatedly, the Defendant further requests that the Court impose special conditions of supervision designed to address the primary drivers of his criminal conduct: his longstanding substance abuse and mental illness. [1]

BACKGROUND

Williams's Personal History

Williams's difficult childhood and personal circumstances are thoroughly detailed in the presentence report. He is the youngest of twelve siblings and was raised in Arkansas until he was approximately 7 years old. At that young age, his father passed away. Shortly thereafter, the family moved to Boston where he mother became involved with a man who was physically and verbally abusive. In letters, several of Mr. Williams's sisters identify their father's death as

---

[1] Williams also requests that the Court incorporate the judicial recommendation identified in the pre-sentence report for placement in the RDAP program.

1

a destabilizing event that had a profound impact on him as the youngest child. His sister, Shirley Williams-Bell, writes:

> After our father passed away, I believe Stevie was around 7 or 8 years old, things seemed to get worse emotionally for the family, especially the younger children. He was very abusive surrounding being forced to stay outside of the house to avoid this abuse by our mother's boyfriend. Abuse meaning beatings, denial of food, listening to arguing and mistreatment of his / our mother, etc. Well, like many children in this situation, he took to the streets, crime, drug use, and whatever he could get involved in to satisfy that loneliness.

*Letter of Shirley Williams-Bell.* Similarly, his sister Betty Williams writes:

> My Mom moved our family to Boston when we were young. I believe Stephen were 8 years old in which our dad passed away that same year, this was hard for us and very devastating to us all. Stephen was very close to our dad. Living with a single mom and 6 siblings still living at home was challenging. Stephen began hanging out in the streets and using drugs at a young age.

*Letter of Betty Williams.* At the age of 14, he ran away from home, seeking refuge in drugs and alcohol. He quickly became ensnared in the grip of addiction that he has never been able to overcome and his life has largely unfolded in a predictable course of substance use and incarceration.

His inability to stay sober has also impaired his ability to treat serious mental health issues, which (when sober) he recognizes require treatment and medication. Records from the Whittier Street Clinic in Boston reflect that Mr. Williams has been variously diagnosed with paranoia, depression, anxiety, a psychotic disorder, and schizophrenia. When actively engaging with treatment and taking medication, his mental health has improved. Moreover, Mr. Williams is amenable to treatment. In fact, records reflect that he sought it out of his own accord. That treatment was discontinued when he resumed drug usage.

2

However, in spite of his struggles with substance and lengthy involvement with the criminal justice system, Mr. Williams is fortunate to maintain close, affectionate relationships with his family.  His niece, Keisha Williams, writes poignantly about how she he encouraged her to stand up for herself when she was picked on as a child and challenged her to complete her arithmetic.  *Letter of Keisha Williams.*  His nephew, Adkeem Jackson, writes about Mr. Williams' volunteer work at a local non-profit organization and his interest in programs to strengthen relationships with family members.  *Letter of Adkeem Jackson.*  Numerous other family members have authored letters, as well.  All are convinced that he has positive qualities that are not reflected by his criminal history, that he is capable of being rehabilitated and is in desperate need of treatment services for substance.  It is clear that Mr. Williams will have the support of his family moving forward.

Events Preceding the Offenses

Several months before the offenses in this case occurred, Mr. Williams's mother passed away.  He was able to visit with her as her health was failing.  This experience was a difficult one for him.  As his sister Shirley recounts:

> We lost our mother August 14, 2016. She suffered a long agonizing six month after falling and breaking her hip. Already suffering from Alzheimer's, she just did not recover. Stevie took it very hard because he was in prison most of her later years-and only got out less than a year prior to her death. When he did finally see her before she passed away, she did not know him. It seemed that put him on another quest to drown himself with drugs.

*Letter of Shirley Williams-Bell.*  Several other family members also cited grief over his mother's death as triggering his most recent relapse, which culminated in the offenses now before the Court.

3

## APPLICATION OF SENTENCING GUIDELINES

The court must "begin sentencing proceedings by correctly calculating the applicable Guideline range." *Gall v. United States*, 552 U.S. 38, 49 (2007).  The presentence report concludes, and the Defendant agrees, that the defendant's Total Offense Level is 24.  This results from a base offense level of 20 under §2B3.1, the addition of 2 levels under §2B3.1(b)(1) due to the property of a financial institution being taken, and the addition of 3 levels under §2B3.1(b)(2)(E) because a dangerous weapon was "brandished or possessed."[2]  The presentence further finds that he falls in Criminal History Category VI, yielding a guidelines sentencing range of between 100-125 months.  Mr. Williams does not dispute this.

## I.    DEFENDANT'S SENTENCING RECOMMENDATION

The Sentencing Guidelines no longer are binding on the Court. *United States v. Booker*, 125 S.Ct. 738 (2005).  Instead, under 18 U.S.C. § 3553(a), the Court should impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in Section 3553(a)(2).  In so doing, a sentencing court "may not presume that the Guidelines range is reasonable" but instead must, using the factors set forth in § 3553(a), "make an individualized assessment based on the facts presented." *Gall v. United States*, 128 S.Ct. 586, 596 (2007). Thus, district courts are permitted to and, in the appropriate case, directed to consider whether disagreement with the Sentencing Commission's underlying

---

[2] The draft presentence report originally provided for a 4 level increase under §2B3.1(b)(2)(D) on the basis that the Defendant "otherwise used" a dangerous weapon in the commission of the offense.  Defendant submitted an objection, accompanied by surveillance footage of the offense, asserting that his conduct more squarely falls within "brandishment or possession" under §2B3.1(b)(2)(E).  Undersigned counsel has been advised that the final presentence report adopts this position.  Therefore Defendant does not believe any evidentiary hearing is necessary with respect to the issue.

4

policy results in a sentence that is unreasonably high.  *Kimbrough*, supra, 128 S.Ct. at 575;

*United States v. Boardman*, 528 F.3d 86 (1 Cir. 2008); *Martin*, supra, 520 F.3d at 93-94. st

The First Circuit has stressed that after *Kimbrough* sentencing courts are to conduct a

"more holistic inquiry" and that "section 3553(a) is more than a laundry list of discrete

sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an

overarching principle."  *United States v. Yonathan Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008).

That overarching principle is to "impose a sentence sufficient but not greater than necessary." *Id.*

In reaching a decision on what constitutes an appropriate sentence, the district court

should "consider all the relevant factors" and "construct a sentence that is minimally sufficient to

achieve the broad goals of sentencing." *Id.* (Emphasis added).

In this case, the Defendant suggests that a sentence of 60 months—together with 3 years

of supervised release and a variety of special conditions to address his substance abuse and

mental illness—is minimally sufficient to achieve the purposes of § 3553(a).  It provides, as it

must, a lengthy punitive sanction balanced with the robust substance abuse treatment and mental

health treatment that will be necessary for his rehabilitation.

**(1)      The Nature and Circumstances of the Offense and the History and Characteristics
of the Offender**

**(a) Nature and Circumstances of the Offense**

The offense in this case is, to be sure, a serious one.  In pleading guilty and submitting

himself to the Court for sentencing, Mr. Williams has acknowledged this.  This notwithstanding,

it should be noted that these robberies were the product of voluminous substance abuse and

impaired thought.  They were done impulsively, with little in the way of planning.  The

unsophisticated nature of Mr. Williams's conduct can be readily distinguished from more professional operations.

**(b) William's History and Characteristics**

Stephen Williams is a 54 year old man whose lifelong struggle with substance abuse has resulted in a long criminal history. His commission of these offenses, while wholly irresponsible, is representative of his struggle against substance abuse brought about by his wholly dysfunctional formative and young adult years. His father's untimely death at a young age did not merely leave him without appropriate guidance and parenting, it introduced an abusive adult, his mother's boyfriend, into his home. He responded to these traumas by withdrawing from school, running away from home, and turning to drugs and alcohol. The consequences of those decisions have been ruinous. There is some reason for optimism, however. Mr. Williams's acknowledgement of mental health issues and his efforts to seek out such services (even if ultimately unsuccessful) indicate that he is motivated to avail himself of services. He has the support of a large, loving family. And at the very least, his advancing age alone suggests that he may be at a lower risk to recidivate when release. In sum, consideration of Mr. Williams's personal history and circumstances suggest that a sentence lower than that suggested by the guideline sentencing range is reasonable and appropriate.

**(2)    The Need for the Sentence Imposed to Satisfy Certain Statutory Objectives:**

**(A)  to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;**

There is no question that that the offenses here are serious and deserving of serious punishment. In these circumstances, however, the Court should consider whether an intermediate sentence more tailored to the particulars of this defendant will more appropriately

6

reflect his conduct than does the range mechanically derived from the applicable sentencing guideline.

**(B)  to afford adequate deterrence to criminal conduct;**

The deterrence of continued criminal conduct is a necessary consideration.  Oftentimes, this means querying how much incarceration might serve to deter future criminal conduct. Certainly, the proposed sentence carries a significant enough sentence ( including the threat of additional incarceration in the supervised release context) to have a deterrent effect.  But the Defendant would also suggest that the deterrence of future criminal conduct can also be accomplished by ensuring that he remain sober and in mental health treatment.  His personal history indicates that this, more than the threat of incarceration, will serve as a more effective deterrent.

**(C)  to protect the public from future crimes of the defendant;**

Admittedly, Williams's criminal history raises public protection concerns. A close examination, though, provides some mitigation.  Although lengthy, most of his criminal history involves non-violent conduct.  Rather, it consists of numerous offenses relating to the possession and/or theft of motor vehicles and related offenses, making the sort of conduct involved in this case a radical departure.  And to the extent that the defendant does represent a threat to the public, again that threat may also be mitigated somewhat by the defendant's advancing age.

**(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Whatever sentence the Court imposes, the time remaining will be more than ample time for Mr. Williams to take advantage of all vocational and substance abuse programs available within the Bureau of Prisons, necessary components of his effort to put his life back together

again post-release. Beyond that, further incarceration will do little to address the issues noted in the presentence report.  Conversely, a three-year term of supervised release with intensive monitoring of his psychiatric issues, drug usage, and employment will contribute directly to his rehabilitation and avoidance of recidivism.  Consequently, a sentence with an intensive supervision component better serves the correctional goal while still providing substantial punishment.

## CONCLUSION

For the foregoing reasons, Stephen Williams asks the Court to sentence him to a 60 month period of imprisonment, to be followed by a three (3) year period of supervised release, with restitution in the amount dictated by the pre-sentence report.  He further requests that the Court impose special conditions of supervised release mandating substance abuse counselling and psychiatric treatment.  Lastly, he asks that the Court impose no fine, as he lacks the ability to pay.

STEPHEN WILLIAMS
By his attorney,
/s/ Scott Lauer
Scott Lauer (BBO #667807)
Federal Defender Office
51 Sleeper Street Boston, MA 02210
Tel: 617-223-8061
Fax: 617-223-8080
Scott_Lauer@fd.org

Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF), as well as U.S. Probation Officer Carolyn Patten, on February 28, 2018.

/s/ Scott Lauer